MARY L. KRONFELD, Respondent, v FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Appellants.

First Department, July 13, 1976

*Roger P. McTiernan* of counsel *(William Kerrigan* with him on the brief; *Barry, McTiernan, Moore & Siracuse,* attorneys), for appellants.

*Melvin I. Friedman* of counsel *(Stanley J. Levy* and *Andrew J. Genna* with him on the brief; *Kriendler & Kriendler,* attorneys), for respondent.

NUNEZ, J. Morris Kronfeld obtained a round trip airline ticket which provided for departure from John F. Kennedy International Airport on May 20, 1968 to Los Angeles with an open ticket for the return flight from Los Angeles. Prior to departure, Mr. Kronfeld purchased two separate, identical in their printed terms, "Scheduled Air Carrier (Airline) Trip Insurance" policies each in the amount of $75,000, from defendants-appellants' sales agent located at the airport. Mr. Kronfled designated his wife, Mary Kronfeld, plaintiff-respondent, as beneficiary. One policy was issued by defendant-appellant the Fidelity and Casualty Co. of New York (Fidelity) and the other was issued by defendant-appellant Commercial Insurance Co. of Newark, New Jersey (Commercial). Each policy cost $2.50.

Two days after leaving New York, Mr. Kronfeld died when a Los Angeles Airways' (a scheduled air carrier) helicopter in which he was a passenger crashed during a flight from Anaheim to Los Angeles Airport. Mary Kronfeld instituted this action after defendants-appellants refused to pay the sums allegedly due on the policies. Clauses relevant to the issues herein are as follows: "2. INSURING CLAUSE: Ticket or Pass Requirement. The Company will pay the benefits specified below if during the term of this policy the Insured suffers loss resulting directly and independently of all other causes from accidental bodily injury (hereinafter referred to as 'such injury'), sustained under circumstances specified below during the first one-way or round trip flight taken by the Insured after the purchase of this policy on Aircraft Operated by a Scheduled Air Carrier as defined below from the Point of Departure to the Destination, both shown above, and return if round trip ticket is obtained before leaving said Point of Departure, provided that at the time that the Insured sustains such injury he is traveling on a ticket or pass covering the whole of said airline trip, issued to him for transportation on an Aircraft Operated by a Scheduled Air Carrier. A ticket issued to the Insured aboard such aircraft after leaving the Point of Departure but before reaching the first scheduled stop of such aircraft shall be deemed to have been issued before leaving the Point of Departure."

"3. SUBSTITUTE TRIP COVERED IF TICKET EXCHANGED. In case of a change in the itinerary of said first airline trip referred to in Section 2 above, following the issuance of this policy and after the Insured has left the Point of Departure on said trip, the insurance afforded as set forth in Section 2 above shall no longer apply on the original itinerary but shall apply on the new itinerary in the same manner and to the same extent as it would have applied on the original itinerary, provided that (1) the transportation ticket or pass issued to the Insured for said first airline trip prior to his leaving the Point of Departure has been exchanged for another ticket or pass issued for transportation on an Aircraft Operated by a Scheduled Air Carrier on the substituted trip and (2) the Point of Departure is the same as that shown above and (3) at least one other stop on the new itinerary is a stop that was scheduled on the original itinerary for said first airline trip.

"4. DEFINITION AND DELIMITATION OF COVERAGE. This policy applies only to such injury sustained by the Insured during such first or substituted airline trip referred to in Sections 2 and 3 above."

These three provisions are on the front of the policy. Superimposed over these clauses, primarily clause 3, appear the following words printed in half-inch letters:

"THIS IS A LIMITED POLICY READ IT CAREFULLY."

The other relevant provisions of the policy are printed on the back of the policy.

"6. POLICY TERM. This insurance shall commence on the day and hour shown above and shall terminate either upon completion of the above described airline trip or upon expiration of, or surrender for refund or credit of, the transportation ticket hereinbefore referred to but in no event shall this insurance extend beyond a period of twelve months."

The insurance companies contend that Mr. Kronfeld was killed while on a side trip not covered by the policies since decedent had not exchanged tickets as required by clause 3 of the policies. A jury trial was held. At the close of the evidence, the trial court determined that only questions of law were presented, dismissed the jury, and rendered a decision on motions for judgment made by each party. The trial court denied defendants' motion for judgment and granted judgment to plaintiff against each defendant in the amount of $75,000,

with interest from May 22, 1968. This judgment should be affirmed. However, we predicate our affirmance on grounds different from the grounds relied upon by the court below.

Defendants concede that Mr. Kronfeld was flying from Anaheim to Los Angeles in order to take a return flight to New York. The sole issue is whether decedent's failure to exchange tickets pursuant to clause 3 of the policy results in denial of coverage for the flight from Anaheim.

Clause 3 requires: an exchange of the original ticket for a new ticket for transportation on an aircraft operated by a scheduled air carrier; the point of departure on the substitute ticket to be the same as on the original ticket; and at least one other stop on the new itinerary to be a stop that was scheduled on the original itinerary. The clause is factually impossible of performance.

Plaintiff does not deny that an exchange of tickets prior to the helicopter flight was possible. However, a substitute ticket would not show New York as the point of departure. See, *Daburlos v Commercial Ins. Co. of Newark, N. J.* (521 F2d 18, 22) in which the Third Circuit Court of Appeals addressed itself to claims arising under insurance policies identical to those purchased by Mr. Kronfeld and which covered insureds who died in the same crash in which Mr. Kronfield died. No airline would issue in exchange a ticket for the portion of the flight already completed. While this would prevent defendants from denying coverage where the exchanged tickets did not list the point of departure, the impossibility of getting substitute tickets to show the original point of departure does not necessarily mean the exchange requirement is vitiated. (See *Larabee Co. v Crossman,* 100 App Div 499, affd 184 NY 586.)

Nonetheless, the ambiguity existing between clauses 3 and 6, which can lead the purchaser of the policy to believe exchange of the original ticket will result in cancellation of insurance coverage preventing, in violation of the intent of the policy agreement, any itinerary substitution, relieves the exchange requirement. While clause 3 requires the exchange of the original ticket for a ticket on the substituted flight, clause 6 provides that the insurance shall terminate upon "surrender for refund or credit of, the [original] transportation ticket." Thus, a purchaser may be led to believe that if he followed the exchange requirements of clause 3, the termination provisions of clause 6 would be activated.

Flight insurance does not lend itself to clarification of

ambiguities. The insurance is usually purchased shortly prior to departure. Usually, as in the case at bar, no explanation of the policy's provisions is afforded. Prior to departure, the insured either mails or hands the policy to someone else for safekeeping. No sample policies are provided for study or reference. Clearly, the insured is not provided reasonable opportunity to comprehend the terms of the policy. (See *Daburlos v Commercial Ins. Co. of Newark, N.J., supra.*)

New York law is clear that all ambiguity must be resolved in favor of the policyholder and against the insurer *(Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390; *Silverstein v Commercial Cas. Ins. Co.,* 237 NY 391). Where a question of fact exists as to insurance coverage limitations, the burden "is on the defendant to establish that the words and expressions used not only are susceptible of the construction sought by the defendant [insurance company] but that it is the only construction which may fairly be placed on them" *(Lachs v Fidelity & Cas. Co. of N.Y.,* 306 NY 357, 365, mot for rearg den 306 NY 941; see, also, *Hartol Prods. Corp. v Prudential Ins. Co.,* 290 NY 44, 49). The burden is upon the insurer to prove that coverage does not exist *(Sincoff v Liberty Mut. Fire Ins. Co., supra; Lachs v Fidelity & Cas. Co. of N.Y., supra).* The clause itself must afford clear notice of non-coverage *(Janneck v Metropolitan Life Ins. Co.,* 162 NY 574, 577-578). The meaning of the terms is that which they convey to the average man *(McGrail v Equitable Life Assur. Soc.,* 292 NY 419, 424; *Tonkin v California Ins. Co.,* 294 NY 326, 329) and not any special meaning in the trade *(Levine v Accident & Cas. Ins. Co.,* 203 Misc 135). The ambiguity between clauses 3 and 6 is sufficient alone to require judgment for plaintiff.

However, we find further that the ticket exchange requirement is immaterial to defendants' risk. It is agreed that the $2.50 premium of each policy was payable regardless of the length of flight by the purchaser of the insurance, whether it be to a neighboring city or around the world. The premium would not change if the purchaser were flying one way or round trip, or if there were substitutions and additional stopovers in the itinerary while en route. That no additional risk is imposed upon the insurer when the original ticket is not exchanged is strongly supported by earlier cases.

In *Fidelity & Cas. Co. of N.Y. v Smith* (189 F2d 315) the court found the factors which determine the company's liability for loss were that the insured be at the time of his death

engaged in a part of a round trip journey, either under the original or substituted ticket, on an approved airline, and that such round trip be the round trip covered by the policy. Whether or not the insured exchanged the original ticket could not affect the liability of the insurer. (See, also, *Rosen v Fidelity & Cas. Co. of N.Y.,* 162 F Supp 211 [ED Pa].) At the time *Smith* and *Rosen* were decided, ticket substitution between airlines was impossible. Exchange was excused because of its impossibility, and coverage granted. In *Steven v Fidelity & Cas. Co. of N.Y.* (58 Cal 2d 862, 876) the court stated: "whether or not a passenger has exchanged his ticket does not remotely increase the risk borne by the company; furthermore, the exchange of tickets is unusual and at times impossible. Hence, the enforcement of the requirement would convert a clause which seemingly extends coverage of the policy for substituted flights into one which denies coverage except in highly unusual situations." When that case was decided, as is the practice today, exchange of tickets between air carriers was permitted. Coverage was found to exist despite the failure to exchange tickets.

While the risk of loss is not increased when the insured fails to exchange the original ticket upon change of flight plans, the airlines assert an exchange of tickets eliminates the necessity of costly investigation in every instance in which an insured is involved in a crash resulting in death. The cost of investigation is included in the calculation to arrive at the cost of the premium. However, the operations manual air travel division of defendant Fidelity belies that assertion. The manual provides that when report of an airline accident is received, an immediate search of the sales records be conducted. This is done by the agent if his counter is involved. A check with the airline concerned should be made and a copy of the passenger manifest obtained. If potential claimants are found, the name of the insured and the amount of coverage should be wired to the air travel division. A copy of the policy stubs should also be forwarded to the air travel division. Obviously, this procedure is effective only for a flight occurring immediately after purchase of insurance. It would not be effective for a return flight on any substituted flight. No procedure is prescribed for investigation of passenger tickets. In fact, no investigation appears to be made. Rather, the insurer waits to be notified of claimed coverage for any return, substituted, or departing flight which does not follow immedi-

ately the sale of insurance. Therefore, no costly investigation accrues because of the failure to substitute. There appears to be no reason to require exchange of the original ticket upon substitution of flights other than to deny coverage where otherwise it would exist. Such purpose is not valid and must be rejected.

The judgment appealed from should be affirmed, with costs and disbursements.

MARKEWICH, J. P., LUPIANO, BIRNS and YESAWICH, JJ., concur.

Judgment, Supreme Court, New York County entered on March 21, 1975, unanimously affirmed. Respondent shall recover of appellants $60 costs and disbursements of this appeal.