**JEWELCOR INCORPORATED, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

Civ. A. No. 78-761.

United States District Court,
M. D. Pennsylvania.

Jan. 30, 1980.

---

**2.** See Docket Nos. 8178–71, 1534–72, 63 T.C. 663 (1975).

40

Perry Shertz, John G. Whelley, Rosenn, Jenkins & Greenwald, Wilkes–Barre, Pa., for plaintiff.

Eugene A. Leiman, Rein, Mound & Cotton, New York City, John J. Scott, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

The Plaintiff owned a property in Pittston, Pennsylvania, covered by a "multi cover" policy of insurance issued by the Defendant. On November 29, 1977 the property was destroyed by fire, and Plaintiff made claims under the insurance policy. Jewelcor carried on various business endeavors through a variety of subsidiaries. It owns many catalogue jewelry showrooms in a number of states, including Pennsylvania. Its Suburban Publishers Division operated a printing plant in Pittston, Pennsylvania, which was the scene. of this fire. The parties made their own peace on the damages to the physical property. The policy also included a "blanket earnings and expenses endorsement", which covered what is commonly called "business interruption" loss. Payment under this endorsement stalled and this lawsuit ensued.

Following the filing of the Complaint, the Defendant raised the question of late notice of claim. This in turn raised the question of whether New York law, or Pennsylvania law should apply.[1] Since this determination is so directional as to the future of this case, counsel properly requested an early determination of this issue. The matter has been fully briefed by both sides, affidavits have been filed, a full day's testimony taken on January 8, 1980, and arguments made to the Court.

1. Under New York law there is no need to show prejudice to affect late filing as a bar to such a claim, whereas prejudice must in fact be shown under Pennsylvania law. See *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977); *Security Mut. Ins. Co. v. Acker-Fitzsimmons*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972).

■ Both sides recognize some fairly recent changes in Pennsylvania's attitude toward the method of determining the choice of laws to be applied in a given case.[2] For a long time Pennsylvania was among those jurisdictions applying a "stiff" approach to determining the appropriate law to apply in a given case. So that in a tort case, the place of the injury (lex loci delecti) rule was followed, and in a contract matter the case was governed by the law of the state where the contract was made.

However, more recent opinion is that these rules should be changed in favor of a more flexible rule which permits an analysis of the policies and interests underlying the particular issue before the Court. This approach has been described as more logical because "the merit of such a rule is that 'it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context' and thereby alleges the forum to apply the 'policy of the jurisdiction "most intimately concerned with the outcome of the particular litigation." ' " *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

The Defendant argues that the law of Pennsylvania has not changed in contract matters and that the rule of the "place where the contract was made" should prevail. Citing, principally, *Crawford v. Manhattan L. Ins. Co. of N. Y.*, 208 Pa.Super. 150, 221 A.2d 877 (1966) and *Ruhlin v. N. Y. Life Ins. Co.*, 106 F.2d 921, (3rd Cir. 1939) and a similar line of holdings, arguing, of course, that the facts show that the contract was made in New York. Plaintiffs argue the law has been changed in Pennsylvania, and that Pennsylvania has adopted a flexible rule applicable to contract cases, which combines an analysis of the "contacts" approach and the "interests and policies" that may be asserted by each jurisdiction. Citing *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796, (1964) and *Melville v. American Home Assur. Co.*, 584 F.2d 1306, (3rd Cir. 1978) and a similar line of cases. They argue the facts show the latter analysis proves more contacts, and greater interests in the State of Pennsylvania.

Each side however argues stoutly that it should prevail under either analysis.

■ The Court has fully reviewed the testimony, the briefs, and arguments, and the appropriate authorities, and concludes as did the *Melville* Court, that the proper approach in Pennsylvania is the *Griffith* approach which combines "the interests analysis" and "the grouping of contacts." [3] In using this approach the Court further finds the appropriate law to be applied to this case is the law of the State of Pennsylvania.[4]

We will not attempt nor is there any need for a lengthy thesis on the intriguing and sometimes confusing area known as conflict of laws. That has been amply done in the Restatement and a variety of law review articles and in the many cases cited or referred to by counsel and the court in the Briefs and in this Opinion. Suffice it to say that the road signs have been clearly posted and marked in Pennsylvania, particularly in the Opinion of Justice Roberts writing for the Supreme Court of Pennsylvania in the *Griffith* case, 416 Pa. at 21–22, 203 A.2d 796, and Judge Garth writing for the Third Circuit, in the *Melville* case, 584 F.2d at 1311. We have abided by and adopted the thinking espoused in those two cases and find that it is appropriate in leading us to the conclusion we have reached in this matter.

Indeed, this case is a classic example of the need to move away from a plastic or a

2. As this is a diversity case and the Court must therefore apply the choice of law rules of the state in which it sits, both sides agree that Pennsylvania law must be used in determining the choice of laws. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

3. See Restatement (Second) of Conflicts, §§ 6, 188, 193 (1971).

4. See decision in Middle District of Pennsylvania, Muir, J., *General Heat & Power Co., Inc. v. Diversified Mortgage Investors*, No. 74–871, (M.D.Pa., September 28, 1977).

stiff approach whereby the choice of laws would be determined by either the place of the injury or the place of the contract. In this day and age, particularly with the advances in transportation and communication, it is common to find lawsuits between people or corporations who in fact do business in many states all across the Nation. It is therefore more necessary to look to that jurisdiction which has more contacts with and more interest in the matter at issue rather than any static application of antiquated laws.

It is true that the testimony and the pleadings and evidence in this case indicate that both Plaintiff and Defendant have offices in and do business in a variety of states throughout the Nation. It is not uncommon to find that large corporations doing business in a variety of states will select a mecca such as New York City to have headquarters offices from which much of their negotiations or business contacts are spawned.

Nonetheless, in this case we find from the testimony and the evidence, that while the Plaintiff does in fact have an office in New York City, as does the Defendant, and while much of the negotiations for this contract did in fact take place in New York, we find also that the Plaintiff Corporations has not only offices, but a substantial business enterprise in Pittston, Pennsylvania, and the subject of this lawsuit is entirely located in Pittston, Pennsylvania.[5] Indeed we find that many of the meetings involved in negotiating this contract did take place in New York, but the testimony also reveals that much of the negotiation was done by telephone and that there were telephonic communication with Pennsylvania, as well as many physical visits into this state, particularly for the purpose of looking over the holdings of the Plaintiff that were to be insured within the boundaries of this Commonwealth.

Additionally we find that the Commonwealth of Pennsylvania has a very substantial interest in protecting the rights of its corporate entities, as well as those with whom they do business. The Defendant Company in this case chose to do business within the confines of the Commonwealth of Pennsylvania, and the business of insuring against catastrophic losses is one in which the Commonwealth has a very distinct interest. It is known, and was indicated in this case, that insurance companies must indeed file with the various states in which they do business and must abide in the drafting and writing and issuing of their policies, not only in the state where their headquarter's office is located, but in any state in which they issue a policy. This, of course, allows the state in which the property covered is located to maintain its own methods of assuring that the coverage is properly written and any losses are properly administered. The insurance Company Law of May 17, 1921, P.L. 682, as amended, Pa.Stat.Ann. tit. 40, § 341 et seq. (Purdon), and the Insurance Department Act of May 17, 1921, P.L. 789, as amended, Pa.Stat.Ann. tit. 40, § 1 et seq., (Purdon), now provide the basic regulation for Pennsylvania insurance carriers.[6]

The Defendant does make the interesting observation that the coverage at issue in this case is not on any real property as such, but covers the business loss claimed by the Plaintiff. Nonetheless, it's a very substantial and a very direct concern of the Plaintiff because it is a loss that allegedly runs into many millions of dollars and affects many of the residents of the Commonwealth of Pennsylvania in a variety of ways, not the least of which are the provision of fire protection, the loss of business to the community in which the Plaintiff

---

**5.** The policy issued in this case covers the property of the Plaintiff in a number of states against a variety of risks. The issue before this Court is the interpretation as it applies to the property in Pittston, Pa. It is of no significance that such a policy would lend itself to interpretation under a variety of state laws, since this

would have been within the knowledge of the parties when the contract was written.

**6.** See interesting history of statutory regulation of insurers in Pennsylvania in Pa.Stat.Ann. tit. 40, pp. xxi–xlii. See also Pa.Stat.Ann. tit. 40 §§ 636–637 (Purdon).

was established, the loss of jobs, and the transfer of that business to another community. These are all vital interests of the state in which the Plaintiff's business, covered by this insurance policy, was located. On the other hand, there is very little interest that the State of New York would have in this litigation. The most significant item that concerns New York State was that perhaps one could arguably find that the policy was indeed written in New York State. This, under the test outlined in the *Griffith* and *Melville* and Restatement approach to solving this problem, is not sufficient.

The Defendant makes the argument that there is no single contract case in Pennsylvania which specifically adopts the contacts and interest analysis approach, and therefore the old approach of the place of the contract must still be the law of this Commonwealth. We do not subscribe to that argument and indeed in many of the cases (such as *Crawford*, 208 Pa.Super. at 156, 221 A.2d 877) cited to bolster this argument, we find the Courts referring to both tests and indicating rather strongly that the *Griffith* test is the one most aptly applied in a situation such as this. For instance, see the one-liner of Judge Hoffman in *Crawford* where he indicates that the *Griffith* test was also applied in reaching the judgment in that case. This approach makes extremely good sense, because as is pointed out in the Restatement (Second) of Conflicts, Section 6, Note (f), "in general, it is fitting that the state whose interests are most deeply affected should have its local laws applied."

In fact, it is interesting to note that while the claim in *Griffith* was for personal injuries, it was in fact an assumpsit action based on the Plaintiff's theory that the Defendant violated a contract for safe carriage or travel. We recognize, of course, that the laws of negligence were applied in the case, but nonetheless, throughout the opinion one finds constant reference to the *negligent violation of contract*. Also, in *Melville*, Judge Garth writing for the Third Circuit Court, very clearly pointed out the logical reasons why the *Griffith* –Restatement approach should be applied in contract actions as well as in tort actions. On further analysis of a number of the cases we have reviewed, as well as those submitted by counsel for both parties, we find too a variety of courts holding that the *Griffith*–Restatement approach applies in Pennsylvania to both tort and contract actions alike. We see no reason why this Court should not follow that same philosophy and pattern, indeed, it is our finding that we are bound to do so. (See Note 4).