Bruce HENNING, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

Civ. No. 81–1183.

United States District Court,
M. D. Pennsylvania.

Aug. 31, 1982.

MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff, a resident of Pennsylvania, originally filed a Complaint against the Defendant Metropolitan Life Insurance Company (Metropolitan or Defendant) in the Court of Common Pleas of Monroe County, Pennsylvania. Metropolitan, a New York corporation with its principal place of business in New York City, then removed the action to this Court on October 16, 1981 pursuant to 28 U.S.C. § 1441(a) on the basis of diversity of citizenship between the parties, 28 U.S.C. § 1332(a). By this action, Plaintiff seeks to enjoin Metropolitan from setting-off the amount of Social Security benefits he receives from the monetary sum he is entitled to under a disability insurance plan provided by Metropolitan. Presently before the Court are cross-motions for summary judgment filed by each party. Fed.R. Civ.P. 56. The litigants agree that no genuine issues of material fact exist in this case and have fully briefed the legal questions involved; thus, the matter is currently ripe for disposition. For the reasons set forth below, the Defendant's motion for summary judgment will be granted and the Plaintiff's motion will be denied.

### I. FACTS

Our review of the materials submitted herein reveals the following facts to be undisputed. In August of 1976 Bruce Henning was a non-union hourly employee of General Electric Company at its Carbon Products Operation plant in East Stroudsburg, Pennsylvania. On August 5, 1976, Plaintiff elected insurance coverage under the "General Electric Long Term Disability Plan" (Plan) and executed a payroll deduction authorization form. The form signed by Plaintiff stated:

> "I elect to be insured for the General Electric Long Term Disability Insurance Plan for hourly employees as set forth in the current announcement, copy of which I have received, and I hereby authorize my employer to make the necessary deductions from my pay to cover the cost of my insurance under such plan.

George Westervelt, Jr., Stroudsburg, Pa., for plaintiff.

Harvey Bartle III, Philadelphia, Pa., Cody H. Brooks, Scranton, Pa., for defendant.

"This request and authorization applies with respect to any long term disability coverage for which I am or may become eligible under the General Electric Long Term Disability Insurance Plan for hourly employees as presently constituted or hereafter amended, and shall continue to apply, unless rescinded by me in writing." Affidavit of Robert Grzybowski, ¶ 2 and Exh. A attached hereto.

Henning was accepted into the Plan effective August 9, 1976 and premiums for participation were thereafter deducted from his salary.

The group disability policy in question, No. 23126–G, was originally issued by Metropolitan to General Electric on January 1, 1970. Several amendments have been made to the policy since its inception date. General Electric had sought such a policy as a result of negotiations with the International Union of Electric, Radio & Machine Workers and other unions representing General Electric employees, as part of the collective bargaining process. A provision in the group policy provides for a reduction in benefits to a participant by the amount received from Social Security for disability compensation. Specifically, it is stated therein that:

"Benefits will be paid monthly and will be one twenty-fourth of your normal straight-time annual earnings reduced by . . . (2) any primary Social Security benefits . . . ." [1]

Plaintiff became totally disabled on April 28, 1978 and was thereby entitled to and received compensation under the Plan. Shortly thereafter, he also filed a claim for Social Security disability benefits but was initially denied by notice dated October 30, 1978. Concurrent with his Social Security claim, Henning signed an agreement with Metropolitan on October 3, 1978, which provided in part:

"In connection with my claim for Long Term Disability benefits provided under the General Electric Long Term Disability Insurance Plan, I certify that I have filed with the Social Security Administration timely application and submitted any required medical evidence for whatever primary benefits, which may be due me under the Federal Old Age, Survivors and Disability Insurance Benefits Program.

I understand that Disability Benefits under the General Electric Long Term Disability Insurance Plan are to be reduced by the amount payable for any period of time for which I am eligible for or receive primary Disability Insurance Benefits under the Social Security Act on my own account.

Pending adjudication of my claim for Social Security Disability Insurance Benefits, I hereby request Metropolitan Life Insurance Company to postpone deducting from my Long Term Disability Monthly Benefits the monthly amount of such primary Social Security Disability Insurance Benefits for which I am or may be eligible or entitled.

I agree that if this request is granted, I will reimburse Metropolitan Life Insurance Company in full for any postponed deductions immediately upon receipt from the Social Security Administration of any retroactive primary Disability Insurance Benefits to the full amount thereof. Furthermore, I agree that in the event of my failure to reimburse Metropolitan Life Insurance Company in full per this Agreement, Metropolitan Life Insurance Company may recoup the amount of the postponed deductions by withholding or reducing future benefit amounts which may become payable under any General Electric coverage for

---

1. General Electric Long Term Disability Insurance Plan For Hourly Employees, section 2, ¶ 3, as amended July 1, 1979. Benefits under this plan are also to be reduced by (1) any disability pension benefits paid under the General Electric Pension Plan, provided such benefits are elected by you, . . . (3) benefits under a Workers' Compensation or Occupational Disease Law, and (4) any benefits available in conformity with Federal, State, Commonwealth or Dominion laws, of the United States or Canada. However, the rate of reduction for most of the above benefits, including Social Security, has been frozen as of April 1, 1979. *Id.* See Affidavit of Stephen Tsorvas, ¶ 5; Affidavit of David Walsh, ¶ 6.

which I am insured." Affidavit of Robert Grzybowski, ¶ 6 and Exh. D attached thereto.

Thereafter, on November 28, 1979, Plaintiff's initial Social Security determination was reversed and he was granted such benefits retroactive to April 28, 1978. After being informed of the change in Plaintiff's Social Security benefit status, Metropolitan advised him that, pursuant to the aforementioned exclusion in the Plan and the October 3, 1978 agreement, it intended to reduce his benefits otherwise due under the Plan by the amount of such award. This set-off would also entail a deduction for previous overpayments to the Plaintiff occasioned by the retroactivity of the Social Security award. Dissatisfied with Metropolitan's decision, Plaintiff then filed an action in the Court of Common Pleas of Monroe County which, as noted above, has been removed to this Court by the Defendant.

As his sole basis for summary judgment, Plaintiff asserts that he was never made aware of the policy exclusion in question nor was its actual effect ever explained to him by the insurer [2] and, therefore, under *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), such a limitation cannot be enforced.

The Defendant's response to Plaintiff's position is two-fold. First, Metropolitan contends that, under the factual circumstances of this case, the substantive law of New York should govern and, thus, there being no similar *Hionis* rule in New York insurance law, summary judgment in its favor is warranted. Alternatively, Metropolitan argues that even under Pennsylvania law it is entitled to summary judgment because the principles espoused in *Hionis* have no application in the group insurance policy context. Consequently, there are two legal issues for the Court to resolve: (1) the appropriate state law which should govern the case; and (2) the enforceability of the exclusion or limitation in the Metropolitan group insurance policy under that state's substantive law.

---

**2.** Affidavit of Bruce Henning, ¶¶ 5–8.

## II. CHOICE OF LAW

In a diversity action such as this, we are, of course, required to apply the choice of law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); see *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1308 (3d Cir. 1978); *Jewelcor Inc. v. St. Paul Fire & Marine Ins. Co.*, 499 F.Supp. 39, 41 n.2 (M.D. Pa.1980). In *Jewelcor*, this Court described the recent shift in Pennsylvania law away from its previous "stiff" approach in choice-of-law problems, whereby the appropriate state law was determined by either the place of the injury in a tort action or the place of agreement in a contract action. *Id.* at 41–42. Adopting the formula espoused in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), we concluded that in Pennsylvania it was now "necessary to look to that jurisdiction which has more contacts with and more interest in the matter at issue rather than any static application of antiquated laws." *Jewelcor, supra,* 499 F.Supp. at 42. For purposes of our present inquiry, then, it has been aptly stated that:

> The current [Pennsylvania] rule governing breach of contract actions directs the courts to make their choice of law by means of a two-part analysis that considers both the significant contacts that the contract has with the various jurisdictions and the interest, if any, that the various jurisdictions have in the subject matter of the contract.

*Mashuda v. Western Beef, Inc.*, 527 F.Supp. 887, 891 (W.D.Pa.1981); see *Melville v. American Homes Assurance Co., supra,* 584 F.2d at 1311–13; *Graves v. Republic Insurance Co.*, 516 F.Supp. 424, 426 (E.D.Pa. 1981); *Nationwide Mutual Insurance Co. v. Walter*, 290 Pa.Super. 129, 136–37, 434 A.2d 164 (1981). In undertaking this conflicts analysis in the instant case, the Court has examined in detail the pleadings, exhibits, affidavits and briefs submitted by the parties.

■ We turn first to consider the extent of the contacts the contract under consideration has with the two concerned jurisdictions, Pennsylvania and New York. From a sheer numerical standpoint, a computation of the significant "contacts" preponderates in favor of the application of New York law. For instance, it is undisputed that the group policy in question and all amendments thereto were applied for, negotiated, signed, issued and delivered in New York.[3] Moreover, the policy and all amendments have been filed and approved by the Insurance Department of the State of New York.[4] The only important contacts Pennsylvania has with this matter is that it is the residence of the Plaintiff, a group member under the policy, and the site of one of the many plant facilities of the multi-state employer involved, General Electric.

■ Despite this quantitative shortage of contacts, Plaintiff argues that "a qualitative analysis of the contacts with New York and Pennsylvania and the interests of each state compel application of Pennsylvania Law."[5] In support thereof, Plaintiff contends the "most compelling" of these interests is Pennsylvania's long-standing "policy of protecting insurance consumers from unexplained policy exclusions",[6] as discussed in *Hionis v. Northern Mutual Insurance Co., supra.* While no doubt this is a salutary and weighty interest in the average insurance company-individual insured setting, we believe its significance diminishes in the group insurance policy context. Under a group insurance plan in Pennsylvania "the real insured is not the employee

but the entity or group of employees, and the employee is in the nature of a beneficiary entitled to receive certain privileges or benefits by reason of that insurance. Therefore, the employer, as representative of that entity, is the real agent of the insured." *Layman v. Continental Assurance Co.,* 416 Pa. 155, 160, 205 A.2d 93 (1964), quoting 1 Appleman, *Insurance Law and Practice,* § 43 at 38 (1941)[7]; see *Hanaieff v. Equitable Life Assurance Society,* 371 Pa. 560, 564–66, 92 A.2d 202 (1952) (employer acts as agent of employee in contracting for group insurance); *McFadden v. Equitable Life Assurance Society,* 351 Pa. 570, 575, 41 A.2d 624 (1945) (same); *Aetna Life Insurance Co. v. Messier,* 173 F.Supp. 90, 96 (same) (M.D.Pa.1959). See also *Boseman v. Connecticut General Life Insurance Co.,* 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937).[8] In view of the fiduciary relationship between an employer and its covered employees under a group insurance plan, the public policy interests underpinning the *Hionis* Court's rationale are simply not as substantial in this setting. As one district court in this circuit has recently noted:

Typically, insurance companies and organizations, not individuals, enter into group insurance contracts. The organizations who purchase such policies have more bargaining power than individual consumers. Usually people with acumen in business dealings and some expertise in insurance represent these organizations. Consequently, the parties negotiate the coverage, price and terms thereof at arm's length. The rationale supporting

---

3. Supplemental Affidavit of David Walsh, ¶¶ 1, 2, 4.

4. *Id.* ¶ 3.

5. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Document # 17) at 3.

6. *Id.* at 4.

7. Page 93 in Revised Vol. 1 (1981 ed.).

8. In *Boseman,* the Supreme Court commented on the nature of the employer-employee relationship with respect to group insurance policies as follows:

Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves. *Id.* 301 U.S. at 204–05, 57 S.Ct. at 690–691 (footnotes omitted).

the *Hionis* rule finds no opportunity for enhancement under these circumstances . . . .

*Brezan v. Prudential Insurance Co. of America*, 507 F.Supp. 962, 966 (E.D.Pa. 1981); see *Weiss v. CNA*, 468 F.Supp. 1291, 1293 (W.D.Pa.1979) (in group insurance context, "the need to protect the individual purchaser from overreaching by an insurance company is minimized."). Accordingly, we conclude that the proffered interest of Pennsylvania in this matter in "protecting insurance consumers from unexplained policy exclusions" is not as strong as Plaintiff maintains.

■ The Defendant, moreover, insists that the state of New York has the greater interest in this controversy. Specifically, Metropolitan persuasively asserts that:

The State of New York has a substantial interest in having all group policies issued in that state interpreted uniformly according to its own state laws, and to that end has enacted statutes regulating all such policies issued or delivered in New York, regardless of the domicile of the group members.[9] Pennsylvania, on the other hand, has indicated its lack of interest in this controversy for it does *not* regulate the form, language, or provisions of such group policies issued in another state, even though the policy covers Pennsylvania residents. Rather its insurance laws govern only those group policies which are issued or delivered in Pennsylvania.[10] Reply Memorandum of Defendant (Doc. # 18) at 2–3 (emphasis in original) (footnotes renumbered).

We concur with the Defendant's interpretation of these relevant statutory provisions and agree that they evidence a particularly forceful and logical basis for the application of New York law.

We also find that our decision in *Jewelcor v. St. Paul Fire and Marine Insurance Co.,* supra, upon which Plaintiff places primary reliance, is no bar to a determination that New York law should govern the instant controversy. In *Jewelcor,* an action brought to recover for "business interruption" losses under a multi-cover insurance policy, this Court found that:

[T]he Commonwealth of Pennsylvania has a very substantial interest in protecting the rights of its corporate entities, as well as those with whom they do business. The Defendant Company in this case chose to do business within the confines of the Commonwealth of Pennsylvania, and the business of insuring against catastrophic losses is one in which the Commonwealth has a very distinct interest. It is known, and was indicated in this case, that insurance companies must indeed file with the various states in which they do business and must abide in the drafting and writing and issuing of

---

**9.** New York Insurance Law, as set forth in CLS Insurance Law § 154, provides in relevant part:

§ 154. *Approval of life, accident, health and annuity contracts.*

1. No policy of life insurance, industrial life insurance, group life insurance, accident or health insurance, group or blanket accident or health insurance or non-cancellable disability insurance, no fraternal benefit certificate or other evidence of any such insurance contract, and no annuity or pure endowment contract or group annuity contract shall be issued or delivered in this state unless a copy of the form thereof shall have been filed with the superintendent . . . . None of the aforementioned policies, contracts, certificates or other evidence of any such insurance contract shall be delivered or issued for delivery in this state and no applications, riders and endorsement shall be used in connection therewith unless approved by the superintendent as conforming to the requirements of

this chapter and not inconsistent with law . . . .

**10.** The relevant section of Pennsylvania Insurance Law, 40 P.S. § 751, provides in pertinent part:

§ 751. *Copies of policies to be filed with and approved by the Insurance Commissioner.*

No policy of insurance against loss from sickness, or loss or damages from bodily injury or death of the insured by accident, shall be issued or delivered by any insurance company, association or exchange issuing such policies, to any person in this Commonwealth until a copy of the form thereof, and of the classification of risks and the premium rates pertaining thereto, have been filed with and formally approved by the Insurance Commissioner . . . .

*See also* 40 P.S. § 756.5.

their policies, not only in the state where their headquarter's office is located, but in any state in which they issue a policy. This, of course, allows the state in which the property covered is located to maintain its own methods of assuring that the coverage is properly written and any losses are properly administered. The Insurance Company Law of May 17, 1921, P.L. 682, as amended, Pa.Stat.Ann. tit. 40 § 341 et seq. (Purdon), and the Insurance Department Act of May 17, 1921, P.L. 789, as amended, Pa.Stat.Ann. tit. 40 § 1 et seq., (Purdon), now provide the basic regulation for Pennsylvania insurance carriers. 499 F.Supp. at 42 (footnote omitted).

Thus, the policy at issue in that case was subject to the rather exacting statutory requirements of this state heretofore mentioned.[11] In contrast, as noted above, Pennsylvania has no similar regulatory function or interest with respect to the group insurance policy between Metropolitan and General Electric. Additionally, no other "vital interests" such as those identified by the Plaintiff in *Jewelcor, i.e.,* the loss of business to the community, loss of jobs, and the transfer of business to another community, are alleged to be at stake in the present case.[12] Finally, we note that *Jewelcor* did not involve a group insurance policy, the interpretation of which should be tempered by the greater need for uniformity and consistency of decision so that "everywhere it shall have the same meaning and give the same protection and that inequalities and confusion liable to result from applications of diverse state laws shall be avoided." *Boseman v. Connecticut General Life Insurance Co., supra,* 301 U.S. at 206, 57 S.Ct. at 691 (footnote omitted).

■ For the foregoing reasons, and in accordance with the general conflicts philosophy that "it is fitting that the state whose interests are most deeply affected should have its local law applied", Restatement (Second), *Conflicts of Laws,* § 6, comment f, we hold that New York law is the appropriate law to be applied in this case. Accordingly, Plaintiff's motion for summary judgment, premised entirely on Pennsylvania law, must be denied.

## III. ENFORCEMENT OF EXCLUSION

[6–8] Under New York law, the rules for the construction of insurance contracts do not differ from those to be applied for the construction of any other contract. *Skandia America Reinsurance Corp. v. Schenck,* 441 F.Supp. 715, 723 (S.D.N.Y. 1977); see *Coppotelli v. INA,* 484 F.Supp. 1327 (E.D.N.Y.), *mod. on other grounds,* 631 F.2d 146 (2d Cir. 1980); *Goodrich v. John Hancock Mutual Life Ins. Co.,* 17 A.D.2d 271, 234 N.Y.S.2d 587 (1962). Accordingly, where the provisions of the insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning and "the Court is not free to modify their terms by judicial construction." *National State Bank, Elizabeth, N.J. v. American Home Assurance Co.,* 492 F.Supp. 393, 396 (S.D.N.Y.1980); see *Government Employees Insurance Co. v. Kligler,* 42 N.Y.2d 863, 397 N.Y.S.2d 777, 366 N.E.2d 865 (1977); *Malican v. Blue Shield of Western New York, Inc.,* 52 A.D.2d 190, 383 N.Y.S.2d 719 (1976). Moreover, in New York, if an insurer wishes to exclude or limit its liability from general coverage, its sole responsibility is to couch such exclusion or limitation in clear and unmistakable language so that no average person may be misled. *Home Insurance Company v. Aurigemma,* 45 Misc.2d 875, 257 N.Y.S.2d 980 (1965). Stated another way, the burden is upon the insurer to prove that coverage does not exist under the policy by demonstrating that the exclusionary clause affords clear notice, in terms

11. See footnote 10, *supra.*

12. Plaintiff does aver that Pennsylvania has an interest in seeing that its domiciliaries receive "rightful compensation" in disputes of this nature. Brief of Plaintiff (Doc. # 17) at 4. We have no quarrel with this contention in the abstract; yet, in practical circumstances, this surely cannot mean that the laws of the plaintiff's state, an essentially non-interested entity, should control simply because they may result in a more favorable monetary outcome for the plaintiff.

which have meaning to the average person, of noncoverage under the policy. *Kronfeld v. Fidelity & Casualty Co. of New York*, 53 A.D.2d 190, 385 N.Y.S.2d 552 (1976). See also *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 368 F.Supp. 1098, 1118 (S.D.N.Y.1973), *aff'd*, 505 F.2d 989 (2d Cir. 1974) ("exclusion from general coverage will be effective only when it is clear, explicit, and unambiguous."); *Charles J. King, Inc. v. U. S. Fidelity & Guarantee Co.*, 264 F.Supp. 703 (S.D.N.Y.1967). There is no similar requirement, as in Pennsylvania law, of proof that "the insured was aware of the exclusion or limitation and that the effect thereof was explained to him." *Hionis v. Northern Mutual Insurance Co., supra*, 230 Pa.Super. at 517, 327 A.2d 363.

In the instant case, there is no contention by Plaintiff that the language of the policy limitation in question is in any way ambiguous, nor does he assert that the average person could be misled as to its true intent. In view of the "clear and unmistakable language" describing the limitation of benefits provision in the insurance policy issued by Metropolitan, this Court must enforce the policy as written and cannot redraft the parties' agreement. See *Government Employees Insurance Co. v. Kligler, supra; National State Bank, Elizabeth, N.J. v. American Home Assurance Co., supra; Coppotelli v. INA, supra.* Accordingly, since no valid ground exists under New York law for refusing to recognize the intended effect of this policy limitation, Defendant is entitled to summary judgment as a matter of law. Metropolitan's motion for summary judgment will therefore be granted.

An appropriate Order will be entered.