OPINION OF THE COURT
Matthew F. Coppola, J.
The determination of whether a vehicle is underinsured is made by comparing the bodily injury limits of the claimant’s insurance policy with the bodily injury limits of the tortfeasor’s policy. But, what are the bodily injury limits in a single limit policy which includes property damage in its coverage? This is the unique issue presented here.
On October 31, 1989, Brian Szeli and his two companions were walking, when they were struck by a vehicle operated by James L. Thompson. It is claimed that each of the three suffered injuries valued at more than $100,000.
At the time of the accident, Brian Szeli’s father, Robert J. Szeli, was insured under an automobile policy issued by petitioner. This policy has bodily injury limits in the amount of $100,000 per person and $300,000 per accident. The policy provides for supplementary uninsured coverage (underinsurance) in the same amounts.
Thompson was insured under a policy issued by the Covenant Insurance Company, which policy has a $300,000 single liability limit. The limit applies to the aggregate of bodily injury and property damage claims. Covenant has offered the full $300,000 in settlement of the claims of the three pedestrians; they propose giving Brian Szeli $95,000, one other party $95,000 and the third party $110,000.
Szeli contacted petitioner, claiming that he is entitled to benefits under his father’s policy. Asserting that the conditions necessary to "trigger” underinsurance coverage are not present, i.e., that underinsurance coverage only applies when the amount of the insured’s coverage exceeds the policy limits of the vehicle causing the accident, petitioner refused to settle with respondent. Respondent then served a demand for arbitration and petitioner brought on this application to stay arbitration.
Insurance Law § 3420 (f) (2) provides that supplementary *74 uninsured motorists coverage shall provide coverage "if the limits of liability under all bodily injury liability bonds and insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy.” (This language is tracked by petitioner’s "New York Endorsement Booklet”.) The coverage provided by the underinsurance endorsement is not available where the policy limits of the insured’s vehicle do not exceed the policy limits of the other vehicle or vehicles involved in the accident (Maurizzio v Lumbermens Mut. Cas. Co., 73 NY2d 951). The comparison of liability coverage is for the purpose of determining applicability of coverage; it has no bearing upon the amount of recovery.
The problem that arises in this case is the difficulty in comparing the "bodily injury liability insurance limits” of the disparate policies. The tort-feasor’s policy has a single limit coverage of $300,000 which includes property damage. The insurance policy covering the injured respondent has bodily injury limits in the amount of $100,000 per person and $300,000 per accident, which limits of course do not include property damage. Petitioner argues that the $300,000 single limit is well in excess of the $100,000 per person coverage. Respondent counters this argument with the claim that, since the single limit policy includes property damages, there is a theoretical possibility that a property damage payout could render moot any recovery for bodily injury. Consequently, reasons respondent, the actual bodily injury limit of the tortfeasor’s policy is necessarily less than $300,000. Complicating the issue is the fact that the statute does not specify which limits of the policies are to be compared, the per person coverage or the per accident coverage.
Where there is ambiguity in the insurance contract, a construction favoring the insurer is sustained only "where it is the sole construction which can fairly be placed upon the words employed.” (Cantanucci v Reliance Ins. Co., 43 AD2d 622, 623.) In other words, ambiguities are "resolved by the courts in favor of the insured and to the detriment of the insurer, particularly where the ambiguity is in an exclusionary clause, and the burden of proving a lack of coverage is on the insurer. (Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663; Allstate Ins. Co. v Klock Oil Co., 73 AD2d 486; Little v Blue Cross, 72 AD2d 200; Hollander v Nationwide Mut. Ins. Co., 60 AD2d 380; Kronfeld v Fidelity & Cas. Co., 53 AD2d 190.)” *75 (Garry v Worldwide Underwriters Ins. Co., 120 Misc 2d 91, 93.) This rule of construction applies no less when the initial ambiguity springs from the Insurance Law, inasmuch as the ability to clarify, to the extent permitted by the intent and language of the statute, rests with the writer of the insurance contract.
The purpose of underinsured motorist coverage is to allow a form of liability insurance coverage after exhaustion of all policies covering the tort-feasor’s vehicle (Matter of Fireman’s Fund Ins. Co. v Freda, 156 AD2d 364). The memorandum of the State Executive Department in its summary of the provisions of the underinsurance statute stated that ” 'supplementary uninsured motorists insurance’ * * * would be excess to the liability coverage of the other automobile in the accident. Thus, by purchasing this option, the insured would obtain the same level of protection for himself and his passengers which he purchased to protect himself against liability to others” (1977 McKinney’s Session Laws of NY, at 2446).
Because the statute and the insurance policy are not definitive with respect to which limits are compared, the court finds that the limits must be the total accident limits. This falls within the previously mentioned rule of construction regarding ambiguity. Moreover, it is the only limit in the single limit policy. It is quite impossible to make any other comparison that would be meaningful. Thus, for purpose of this triggering mechanism for underinsurance, the court deems that each policy has a limit of $300,000. However, the single limit policy for $300,000 includes coverage for more than bodily injury. It necessarily follows that the bodily injury limit of the single limit policy is less than the bodily injury limit of the other policy. The Prudential policy will always have $300,000 available for bodily injury; the single limit policy’s will not necessarily have that amount available for bodily injury. It is obvious, then, that the protection afforded by the single limit policy is not as great as the protection afforded by the policy issued by Prudential. Since the purpose of the underinsurance statute is to enable the policyholder to obtain coverage for injury to himself equal to the coverage protecting others from his liability, that purpose would be frustrated by holding that the theoretical $300,000 bodily injury limit of the single limit policy was equal to the $300,-000 bodily injury limit of the Prudential policy.
It is the conclusion of this court that the tort-feasor’s *76 automobile was underinsured and that the underinsured coverage of the Prudential policy applies. The petition to stay arbitration is denied and the parties are directed to proceed to arbitration.