466 A.2d 629

**Walter SMITH, Appellant,**

**v.**

**CNA INSURANCE.**

Superior Court of Pennsylvania.

Argued April 27, 1983.

Filed Sept. 23, 1983.

Raymond J. Seals, Pittsburgh, for appellant.

Daniel F. Cusick, Pittsburgh, for appellee.

Before ROWLEY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

Appellant-plaintiff, Walter Smith, brought this action against appellee-defendant, CNA Insurance, alleging that his benefits under an employee disability insurance plan had been reduced wrongfully. A trial was held by a judge, sitting without a jury, who entered a verdict in favor of appellant. Exceptions were filed, and the court sitting en banc granted appellee's exceptions, and, accordingly, vacated the previous verdict and directed the prothonotary to enter judgment in favor of appellee.[1] This appeal followed. We affirm.

Appellant contends that (1) the exclusion clause set forth in the disability insurance contract must be construed against the insurance company and also that (2) he did not reasonably expect the insurance carrier to deduct from his monthly disability insurance benefits collateral social security benefits paid directly to his emancipated non-dependent children in addition to the deduction of social security disability benefits paid directly to him. We reject appellant's contentions.

The facts in the instant case were stipulated by the parties and established the following:

1. Appellant, Walter Smith, received a letter, dated March 8, 1979, from Duquesne University explaining the computation of his benefits under his salary continuation plan.[2]

---

**1.** According to the record, judgment was entered on April 15, 1983.

**2.** Exhibit A reads as follows:
"March 8, 1979
Professor Walter J. Smith
2457 Haymaker Road
Monroeville, Pa. 15146
Dear Professor Smith:
  Enclosed please find the initial check issued by CNA/Insurance for one month of total disability to March 17, 1979, in the amount of $1,224.00. This benefit was calculated as follows:

$24,480/yr. ÷ 12 months = $2,040/month x 60% = $1,224/month

Please note that CNA is allowing full disability benefit as you requested. *It is important that you advise us of any award you and*

2.   Appellant, Walter Smith, received a letter, dated April 22, 1980, from CNA Insurance further explaining the computation of his benefits under the salary continuation plan and itemizing the deductions taken for his own Social Security benefits and those for his eligible dependents.[3]

*the members of your family may receive from Social Security so that no substantial overpayment occurs on your file for which you will have to reimburse CNA/Insurance.*

Also enclosed please find a carbon copy of the check in the amount of $244.80 which CNA has provided for payment of your monthly TIAA–CREF retirement annuity premiums, as follows:

|  | | | |
|---|---|---|---|
| | $2,040/month x 5% Employee Contribution | = | $102.00 |
| plus | 2,040/month x 7% Duquesne Contribution | = | 142.80 |
| | Total Monthly TIAA–CREF Contributions | = | $244.80 |

Enclosed please find a brochure from CNA/Insurance which briefly outlines the benefits of their salary continuance plan.

If you have any further questions, please write or call me.

Sincerely yours,
/s/ Ruthann Saylor
(Miss) Ruthann Saylor
Benefits Coordinator
Office of Personnel Services
RAS/maw
Enclosures
VIA CERTIFIED MAIL (# 964162)
RETURN RECEIPT REQUESTED
bcc: Mrs. Carol Koch, CNA
    Mr. Edward J. Hughes D/S/B
    SMITH LTD File"
(Emphasis added).

**3.**   Exhibit B reads as follows:

"April 22, 1980
Walter Smith
2457 Haymaker Road
Monroeville, PA 15146
Claim: 62–579828–A3
Policy: 068088013
Dear Mr. Smith:
The above captioned policy is a salary continuance policy, the monthly benefits being reduced by payments from Social Security for the primary insured and eligible dependents.
We have received information from Social Security which indicates that effective 2/1/79, *you were awarded a $484.40 Social Security disability benefit and your daughters Tara and Maura were awarded $181.50 each per month on your behalf.* Thus your family's Social Security award effective 2/1/79 is $847.40.

3. Appellant, Walter Smith, received a brochure from Duquesne University outlining his benefits under the salary continuation plan which specificially [sic] stated that any amounts "paid or payable under the disability or retirement provisions of the Social Security Act (including any payments for eligible dependents)" would be deducted from his benefits.[4]

4. The disability provisions of the Social Security Act which apply to this case and were the basis for the granting of benefits to appellant's daughters are as follows:

Our benefits became payable 2/17/79. Our monthly liability was $1,224.00. Deducting your $847.50 family Social Security award, our payments to you commencing 2/17/79 should have been based upon a $376.60 per month figure. Thus, from 2/17/79 to 4/17/80, benefits were owed to you in the amount of $5,272.40. However, benefits are paid to you in the amount of $7,813.42 (please note, the $968.80 return from you previously has been taken into account and the benefits paid). Deducting the benefits owed from the benefits paid leaves an overpayment of $2,541.00.

Please forward to our office your personal check made payable to CNA/insurance in the amount of $2,541.00 to cover the overpayment. We wait to hear from you. Also, if you have any questions, please contact this office.

Sincerely,
GAIL ROBERTS
A & H Claim Department
Eastern Regional Branch Office
(215) 372–4567, Ext. 247
ams
CC: Duquesne University
      600 Forbes Ave.
      Pittsburgh, PA 15219
      Attention: Ruthann Saylor" (Emphasis added).

4. The pertinent portion of the brochure contains the following language:

**"WHAT ARE THE BENEFITS?**

If a disability due to an accident or sickness continues beyond the first six months, Salary Continuance Benefits become payable. Salary continuance insurance will provide you with a benefit of 60% of the first $1,000 of monthly salary plus 40% of excess to a maximum combined benefit of $1,000 per month *less any amounts paid or payable under the disability or retirement provisions of the Social Security Act (including any payments for eligible dependents)*, any workmen's compensation or any occupational disease act or law, any state compulsory disability benefit law; and any disability, retirement or other income benefits provided by or through the employer." (Emphasis in original)

(a) 42 U.S.C. § 402(d)(1)(B);

(b) 42 U.S.C. § 402(d)(3);

(c) 42 U.S.C. § 405(j).

5. Appellant, Walter Smith, was employed as a Professor in the School of Business and Administration at Duquesne University.

6. The Social Security Administration awarded Social Security Disability Benefits to appellant, Walter Smith, in the amount of $484.40 per month plus Social Security Awards to his adult daughters in the amount of $181.50 each for a combined total of $847.40.

The pertinent section of the salary continuance plan contains the following language:

## "ADDENDUM

(1) With respect to faculty members, the term 'salary' shall mean one-twelfth of the insured employee's academic year contract salary (exclusive of bonuses, commissions and overtime earnings) received from the employer. With respect to all other employees, the term 'salary' shall mean the monthly wage or salary the insured employee was receiving from the employer as of the date of the accident or commencement of disability from sickness; but excluding any commissions, over-time earnings or other remuneration under profit sharing plans or other bonus arrangements.

(2) Any monthly indemnity payable hereunder shall be reduced by any amounts paid or payable *under the disability or retirement provisions of the Social Security Act (including any payments for eligible dependents* except those which are subject to an actuarial reduction), *any Workmen's Compensation or any Occupational Disease Act or Law, any State Compulsory Disability Benefit Law;* and any disability, retirement or other income benefit provided by or through the employer. The amount of reduction with respect to Social Security shall be the monthly amount

which applies to the first period for which benefits are paid under Social Security. Subsequent changes in benefits *under the Social Security Act* except for changes in dependent status, shall not reduce or increase benefits payable under this policy. However, in the event a change in the dependent status of the insured employee occurs, the amount payable will be computed on such change from that point in time when the insured employee first received Social Security Benefits." (Emphasis added)

When construing insurance policies, we recognize that because an insurance policy is a contract, the intent of the parties is manifested by the language of the written agreement. *Mohn v. American Casualty Co.*, 458 Pa. 576, 326 A.2d 346 (1974); *Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978). The policy must be read in its entirety and, where the language is clear and unambiguous, its terms are to be given their plain and ordinary meaning. *Pennsylvania Manufacturers' Ass'n. Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967); *Monti v. Rockwood Insurance Company*, 303 Pa.Super. 473, 450 A.2d 24 (1982). *Blocker v. Aetna Casualty & Surety Company*, 232 Pa.Super. 111, 332 A.2d 476 (1975).

Appellant suggests that we should ignore the provisions of the Social Security Act, because in his view, "there is no language in the contract or brochure that permits Defendant, CNA, to deduct social security payments made to adult daughters." Brief at 11.

At this point, an examination of the policy scheme is in order. The salary continuance plan states that under certain circumstances the monthly payment shall be reduced by amounts which are "paid or payable,"

(1) "under disability or retirement provisions of the Social Security Act";[5]

**5.** Act of August 14, 1935, C. 531, Title II, § 202, 49 Stat. 623; *as amended.*

(2) "Workmen's Compensation or any Occupational Disease Act or Law";

(3) "any State Compulsory Disability Benefit Law"; and

(4) "any other disability, retirement, or other income benefit *provided by or through the employer.*" (Emphasis added).

For background information, we note that in 1956, Congress created a disability insurance program, which "unlike the public assistance provisions was not need based, but instead was designed to protect against economic hardships created by involuntary, premature retirement." *Mathews v. De Castro*, 429 U.S. 181, 186 ftn. 6, 97 S.Ct. 431, 435 ftn. 6, 50 L.Ed.2d 389, 394 ftn. 6 (1976). This program, the Social Security "retirement and disability program", is an "insurance program [which is] contributory in nature and [is] designed to prevent public dependency by protecting workers and their families against common economic hazards." *Id.*

Because the clause at issue specifically refers to the *"provisions of the Social Security Act (including any payments for eligible dependents)"*, we will look to the provisions of that Act for guidance in order to determine who are "eligible dependents."

Under the child's insurance benefits provisions of the Social Security Act, coverage is extended to

*"(1) Every child (as defined in section 416(e) of this title)* [6] *of an individual entitled to old-age or disability*

_____

**6.** Section 416(e) provides:

"(e) Child

The term 'child' means (1) the child or legally adopted child of an individual, (2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed or (if the insured individual is deceased) not less than nine months immediately preceding the day on which such individual died, and (3) a person who is the grandchild or stepgrandchild of an individual or his spouse, but only if (A) there was no natural or adoptive parent (other than such a parent who was under a disability, as defined in section 423(d) of this title) of such person living at the time (i) such individual became entitled to old-age insurance benefits or disability insurance

*insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—*

(A) has filed application for child's insurance benefits,

(B) *at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in section 423(d) of this*

benefits or died, or (ii) if such individual had a period of disability which continued until such individual became entitled to old-age insurance benefits or disability insurance benefits, or died, at the time such period of disability began, or (B) such person was legally adopted after the death of such individual by such individual's surviving spouse in an adoption that was decreed by a court of competent jurisdiction within the United States and such person's natural or adopting parent or stepparent was not living in such individual's household and making regular contributions toward such person's support at the time such individual died. For purposes of clause (1), a person shall be deemed, as of the date of death of an individual, to be the legally adopted child of such individual if such person was at the time of such individual's death living in such individual's household and was legally adopted by such individual's surviving spouse after such individual's death but only if (A) proceedings for the adoption of the child had been instituted by such individual before his death, or (B) such child was adopted by such individual's surviving spouse before the end of two years after (i) the day on which such individual died or (ii) August 28, 1958; except that this sentence shall not apply if at the time of such individual's death such person was receiving regular contributions toward his support from someone other than such individual or his spouse, or from any public or private welfare organization which furnishes services or assistance for children. For purposes of clause (2), a person who is not the stepchild of an individual shall be deemed the stepchild of such individual if such individual was not the mother or adopting mother or the father or adopting father of such person and such individual and the mother or adopting mother, or the father or adopting father, as the case may be, of such person went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of subsection (h)(1)(B) of this section, would have been a valid marriage. For purposes of clause (2), a child shall be deemed to have been the stepchild of an individual for a period of one year throughout the month in which occurs the expiration of such one year. For purposes of clause (3), a person shall be deemed to have no natural or adoptive parent living (other than a parent who was under a disability) throughout the most

*title*[7] which began before he attained the age of 22, and

(C) was dependent upon such individual—

(i) if such individual is living, *at the time such application was filed,*

(ii) if such individual has died, at the time of such death, or

(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits, shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs—

shall be entitled to a child's insurance benefit for each month, beginning with—

(i) in the case of a child (as so defined) of such an individual who has died, the first month in which such child meets the criteria specified in subparagraphs (A), (B), and (C), or

(ii) in the case of a child (as so defined) of an individual entitled to an old-age insurance benefit or to a disability insurance benefit, the first month throughout

recent month in which a natural or adoptive parent (not under a disability) dies.

7. Under § 423, the term disability means:
"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or

(B) in the case of an individual who has attained the age of 55 and is blind (within the meaning of 'blindness' as defined in section 416(i)(1) of this title), inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time."

which such child is a child (as so defined) and meets the criteria specified in paragraphs (B) and (C) (if in such month he meets the criterion specified in paragraph (A)),

\*    \*    \*    \*    \*    \*

(3) *A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—*

(A) *such child is neither the legitimate nor adopted child of such individual, or*

(B) *such child has been adopted by some other individual.*  For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual." (Emphasis added) (Footnotes added).

Appellant has offered no definition of the term "eligible dependents" other than to state that "[t]he clear meaning of this language is that [p]laintiff's indemnity will be reduced by social security payments paid to *him for himself and for other eligible dependents.*  It does not state that his monthly indemnity will be reduced by social security payments paid *directly to* adult daughters."  Brief for Appellant at 9–10. (Emphasis added)  If, as appellant suggests, some other definition of dependent was to operate in tandem with the salary continuation plan, there would have been no need for the policy to contain the following:

"The amount of reduction with respect to Social Security shall be the monthly amount which applies to the first period for which benefits are paid under Social Security. *Subsequent changes in benefits under the Social Security Act except for changes in dependent status, shall not reduce or increase benefits payable under this policy.*  However, in the event a change in the dependent

status of the insured employee occurs, the amount payable will be computed on such change from that point in time when the insured employee first received Social Security Benefits." (Emphasis added)

By linking the amount payable under the policy in disability cases to the social security scheme, the parties to the contract provided a logical indicator of dependency status without requiring a factual determination into whether a policyholder has eligible dependents since presumably that decision has already been made at the social security level. Simply stated, the policy defers to the expertise of the Social Security Administration. *Cf. Weinberger v. Salfi,* 422 U.S. 749, 767, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522, 539 (1975) (doctrine of administrative exhaustion is required "as a matter of preventing premature interference with agency process, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of *its experience and expertise,* and to compile a record which is adequate for judicial review.") (Emphasis added).

Interestingly enough, at the time that appellant's daughters initially applied for children's insurance benefits under the Social Security Act, a presumption arose that they were appellant's dependents because, *inter alia,* (1) the daughters either were living with appellant; or (2) appellant contributed to their support. 42 U.S.C.A. § 402(b)(3). Appellant conceded as much in his stipulation.[8]

---

**8.** The United States Supreme Court has commented on the presumptions embodied in the social security statute and has said:

"Instead of requiring individualized proof on a case-by-case basis, Congress has elected to use simple criteria, such as age and marital status, to determine probable dependency. A child who is married or over 18 and neither disabled nor a student is denied benefits because Congress has assumed that such a child is not normally dependent on his parents. There is no question about the power of Congress to legislate on the basis of such factual assumptions. General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases. *Weinberger v. Salfi,* 422 U.S. [at] 776, 95 S.Ct. [at]

We note that appellant does not argue that his two adult daughters are not entitled currently to receive social security benefits; instead, he is arguing that although they are entitled to social security benefits, his policy payment should not be reduced by an amount awarded to them under the Social Security Act. Before this Court, appellant is in the unique position of espousing the contrary of what enabled his daughters to receive social security benefits in the first instance.

The reason that payments are made directly to appellant's daughter is because of the following section of the Social Security Act which the parties have stipulated is controlling:

**"Direct or indirect certification**

(j) When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency of incompetency of the individual entitled thereto, *either for direct payment to such applicant, or for his use and benefit to a relative or some other person."* 42 U.S.C.A. § 405(j). (Emphasis added).

Although it appears that appellant's daughters are continuing to receive social security benefits because they are full-time students (Hearing Transcript at 3), we cannot confirm this fact of record because arguments of counsel are not considered a part of the official record. *Commonwealth v. Rini*, 285 Pa.Super. 475, 481–482 ftn. 5, 427 A.2d 1385, 1389 ftn. 5 (1981).

■ Notwithstanding this deficiency, we conclude that the amount which appellant receives under the policy is predicated not upon appellant's definition of who is or who is not a dependent. Instead, the Social Security Act definition controls. As a result, we must reject appellant's argument.

2472, 45 L.Ed.2d 522.... [The rules] avoid any necessity for periodic review of the beneficiaries' continued entitlement."
*Califano v. Jobst*, 434 U.S. 47, 52–53 and 57, 98 S.Ct. 95, 99 and 101, 54 L.Ed.2d 228, 234 and 237 (1977).

Additionally, appellant relies on the principles that because the terms of the policy are ambiguous and because of the inferior bargaining position of the parties, the insured could expect reasonably that his benefits would not be reduced. First of all, the terms of the policy in dispute, as previously set forth, are clear and are not reasonably susceptible to more than one interpretation. *See Cohen v. Erie Indemnity Company,* 288 Pa.Super. 445, 451, 432 A.2d 596, 599 (1981).

■ Second, we need not construe the insurance provisions against the writer of the policy under the theory that insurance contracts are contracts of adhesion because the policy in question was a group plan and not an individual plan as the real insured was not appellant, the individual employee, but a group of employees who were represented by their employer, Duquesne University. *See Layman v. Continental Assurance Company,* 416 Pa. 155, 158–162, 205 A.2d 93, 95–96 (1964); *Henning v. Metropolitan Life Insurance Company,* 546 F.Supp. 442 (M.D.Pa.1982).[9]

Additionally, there is no indication in the record or otherwise that the insurance company led appellant to reasonably expect a different result. *See e.g., Collister v. Nationwide Life Insurance Company,* 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied, Nationwide Life Insurance Company v. Collister,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979).

■ In fact, a letter from the insurance company which was sent to appellant requested that appellant "advise us of

9. In fact, the United States Supreme Court has expressed similar views:

"Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves."

*Boseman v. Connecticut General Life Insurance,* 301 U.S. 196, 204–205, 57 S.Ct. 686, 690–691, 81 L.Ed. 1036, 1041 (1937).

any award you and the members of your family may receive from Social Security so that no substantial overpayment occurs on your file for which you will have to reimburse CNA/Insurance." Exhibit A, supra at pp. 451–452, ftn. 2. For appellant to now argue that he could not reasonably expect for him to be required to pay over $2,000.00 in view of the policy language and the correspondence he received is unsupported by the record.

Order and judgment affirmed.