**Michael E. ROBSON and Tammy Robson, Appellants,**

v.

**EMC INSURANCE COMPANIES, Appellee.**

Superior Court of Pennsylvania.

Argued May 15, 2001.

Filed Oct. 24, 2001.

David W. Knauer, Mechanicsburg, for appellants.

Amy L. Coryer, Jr., Camp Hill, for appellee.

Before: CAVANAUGH, STEVENS, and TAMILIA, JJ.

STEVENS, J.

¶ 1 Appellants, Michael Robson and his wife, Tammy Robson (hereinafter "the Robsons"), appeal from the order issued by the Court of Common Pleas of Dauphin County on August 22, 2000, rendering declaratory judgment in favor of Appellee, EMC Insurance Companies (hereinafter "EMC"). In this case of first impression, we are asked to interpret the underinsured provisions of the Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"), 75 Pa.C.S.A. §§ 1731–1738, to determine if both compensatory and punitive damages are recoverable under the relevant provisions of the MVFRL.[1] After review of the briefs, certified record, and statutory law, we affirm.

¶ 2 This action stems from an automobile accident that occurred on August 18, 1996. At approximately 11:35 p.m., Mr. Robson, while operating a marked police cruiser in the course of his employment as a police officer with Coolbaugh Township, suffered multiple injuries when his vehicle was rear-ended by Dana Nieuwkerk, who was intoxicated at the time of the accident. With permission from EMC, Coolbaugh Township's insurer, Mr. Robson accepted the tender of Ms. Nieuwkerk's insurance policy limit of fifteen thousand dollars ($15,000.00) without prejudice to his underinsured coverage.

¶ 3 Subsequently, the Robsons filed a Complaint requesting a declaratory judgment as to the liability of EMC under its contract with Coolbaugh Township; specifically, as to whether both compensatory and punitive damages are recoverable under the underinsured provisions of the MVFRL. The Robsons also filed a Petition for Declaratory Judgment and brief in support thereof. Following EMC's filing of an Answer and New Matter, the Robson's submitted a Reply to the New Matter.

¶ 4 By Opinion and Order filed August 22, 2000, the Honorable Richard A. Lewis, writing for a three-member panel, rendered declaratory judgment in favor of EMC and against the Robsons, concluding

---

1. This case has been assigned to arbitration; however, the hearing has been stayed pending the resolution of the declaratory judgment proceeding.

that, pursuant to the MVFRL and the insurance contract in question, EMC was not required to provide punitive damages to the Robsons. The present appeal followed.

¶ 5 Herein, the Robsons raise the following issues for review:

ARE BOTH COMPENSATORY AND PUNITIVE DAMAGES RECOVERABLE UNDER THE STATUTORY UNDERINSURANCE PROVISIONS OF THE [MVFRL]?

WHEN THE STATUTE'S USE OF THE WORD 'DAMAGES' IN THE PHRASE 'ARE LEGALLY ENTITLED TO RECOVER DAMAGES' IS CLEAR AND FREE FROM ALL AMBIGUITY, PURSUANT TO SECTION 1921(B) DID THE COURT ERR WHEN IT REFUSED TO CONSTRUE THE UNDERINSURANCE PROVISIONS AS THE LEGISLATURE HAD ENACTED THE LAW TO PERMIT THE [ROBSONS] TO RECOVER PUNITIVE DAMAGES UNDER THEIR UNDERINSURED COVERAGE THEY PURCHASED TO PROTECT THEMSELVES?

IF THE SECTION 1921(C) ANALYSIS IS APPLIED TO CONSTRUE THE WORD DAMAGES IN THE PHRASE 'ARE LEGALLY ENTITLED TO RECOVER DAMAGES', ARE THE [ROBSONS] ARE [sic] ENTITLED TO RECOVER PUNITIVE DAMAGES IN AN UNDERINSURED ARBITRATION.

DID THE LOWER COURT ERR WHEN IT BASED ITS HOLDING INTERPRETING THE UNDERINSURANCE PROVISIONS OF THE NO FAULT ACT ON A CASE THAT WAS DECIDED SEVEN YEARS BEFORE THE ENACTMENT OF THE ORIGINAL NO FAULT ACT?

WHEN THE LEGISLATURE HAS DETERMINED THE PUBLIC POLICY OF THE COMMONWEALTH ON A SUBJECT, MAY THE PARTIES TO A CONTRACT SET ASIDE THE STATUTE AND IS AN INSURANCE CONTRACT TO DO SO UNENFORCEABLE OR VOID AS AN ADHESION CONTRACT?

Brief of Appellants at 3 (proposed responses omitted).

¶ 6 As noted above, the Robsons filed a declaratory judgment action. "[T]he purpose of the Declaratory Judgments Act . . . is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Juban v. Schermer*, 751 A.2d 1190, 1193 (Pa.Super.2000) (citation omitted). Under the Declaratory Judgments Act, the trial court is empowered to declare the rights and obligations of the parties involved. *Id.* "Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law." *Keystone Spray Equipment, Inc. v. Regis Insurance Co.*, 767 A.2d 572, 574 (Pa.Super.2001). We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence. *Adams v. Adams*, 725 A.2d 824 (Pa.Super.1999).

¶ 7 In the present case, we begin with an analysis of the pertinent provisions of EMC's insurance policy with Coolbaugh Township. The Underinsured Motorist Coverage Endorsement contained therein provides as follows:

**A. COVERAGE**

1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the

'insured' caused by an 'accident'. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an 'underinsured motor vehicle'.

\*　　\*　　\*　　\*　　\*　　\*

## C. EXCLUSIONS

¶ 8 This insurance does not apply to any of the following:

\*　　\*　　\*　　\*　　\*　　\*

3. Punitive or exemplary damages.

Pennsylvania Underinsured Motorist Coverage Endorsement.

¶ 9 "When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Travelers Casualty & Surety Co. v. Castegnaro*, 565 Pa. 246, 251, 772 A.2d 456, 459 (2001).

¶ 10 As evidenced by the provisions of the insurance policy set forth above, EMC did not agree to indemnify its insured for claims for punitive damages. Therefore, EMC was not obligated to do so. *Creed v. Allstate Insurance Co.*, 365 Pa.Super. 136, 529 A.2d 10 (1987).

¶ 11 The Robsons' further contend that the policy is an adhesion contract and unconscionable; and, therefore, unenforceable. An adhesion contract is defined as a "[s]tandard form contract prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who has little choice about the terms." Black's Law Dictionary (7th ed.1999).

¶ 12 In the case *sub judice,* the insurance policy was not purchased individually by Mr. Robson, but rather by Coolbaugh Township for its employees. As such, it is fair to conclude that, unlike a situation in which a consumer is often forced to accept the non-negotiable terms of a standard form insurance contract, the parties to the present insurance contract, Coolbaugh Township and EMC, entered into the insurance contract with substantially equal bargaining power; thereby negating any claim that the contract so entered into was one of adhesion. *See Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061, 1067 (1992); *See also Smith v. CNA Insurance,* 319 Pa.Super. 449, 466 A.2d 629, 636 (1983). As such, the Robsons' claim predicated on this basis is without merit.

¶ 13 The Robsons also argue that the terms of the insurance policy are contrary to the provisions of the MVFRL, which allows for the payment of punitive damages, while EMC counters that the legislature never intended to provide for the payment of punitive damages.

¶ 14 Our task in this case of first impression is to identify the type of damages recoverable under the MVFRL. The MVFRL provides, in pertinent part, as follow:

> **Underinsured motorist coverage.—** Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.

75 Pa.C.S.A. § 1731(c).

¶ 15 We first observe that the term "damages" is not defined in the Law. The Robsons contend that the unmodified use of the word "damages" in this section establishes a legislative intent to include both compensatory and punitive damages. The trial court, however, concluded that the intent of the legislature was not to provide for punitive damages in underinsured cases. The court reasoned that if the legislature intended to include punitive

damages in such cases, it would have expressly done so in Section 1731.

¶ 16 In an attempt to ascertain the intent of the legislature, we turn to the rules of statutory construction. "Our goal in statutory interpretation is to 'ascertain and effectuate the intention of the General Assembly,' and we strive to give effect to all the provisions in a statute." *Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 777 A.2d 84, 90 (Pa.Super.2001) (citations omitted). "In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. Accordingly, 'whenever possible, courts must construe a statute so as to give effect to every word contained therein.'" *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616, 620 (Pa.Super.1999) (citations omitted).

¶ 17 As noted above, the Robsons argue that if the legislature had intended to exclude punitive damages from uninsured motorist cases, it would have expressly done so. EMC argues to the contrary; that if the legislature intended to include punitive damages in such cases it would have expressly done so.

¶ 18 In *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745 (1998), the Supreme Court, in addressing the issue of whether punitive damages were recoverable under the Pennsylvania Human Relations Act, stated, in pertinent part, as follows:

Initially, we note that our Legislature was free to provide for punitive damages under the Act. Indeed, even a cursory survey of other statutory enactments by our Legislature makes clear that it knew how to provide for punitive damages in clear and unambiguous terms. Thus, as a starting point, it is reasonable to infer that the General Assembly's use of specific language to permit the award of

punitive damages in numerous statutes reflects an intention to allow such remedy only when expressly provided for. *Id.* at 140–141, 720 A.2d at 748.

¶ 19 Furthermore, the waiver of underinsured motorist coverage contained in the MVFRL states as follows:

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all loses and damages. I knowingly and voluntarily reject this coverage.

75 Pa.C.S.A. § 1731(c) (emphasis added).

¶ 20 The foregoing provision clearly speaks to losses and damages caused by the negligence of another. It is well settled that punitive damages are not awarded for negligent or evenly grossly negligent conduct of another. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991). Thus, as argued by EMC, if punitive and exemplary damages were encompassed by the general language of the statute in question, these damages would also have been included in the waiver provision.

¶ 21 Contrary to the position asserted by the Robsons, we find, as did the trial court, that if the Legislature intended to include punitive damages as recoverable under the MVFRL, it would have expressly done so. *See e.g. Laird v. Nationwide Insurance Co.,* 243 S.C. 388, 396–397, 134 S.E.2d 206, 210 (1964) (In concluding that only compensatory or actual damages were covered under the state's motor vehicle insurance statute, the Court opined that "if [punitive or exemplary] damages had been in the contemplation of the Legislature, it could

have easily provided for in said statutes."). Consequently, the trial court did not abuse its discretion or commit an error of law in determining that punitive damages are not recoverable under the relevant provisions of the MVFRL [2] and, in turn, rendering declaratory judgment in favor of EMC.

¶ 22 Based on the foregoing, we affirm the declaratory judgment entered in favor of EMC.

¶ 23 Affirmed.

2. We briefly note that an additional statute set forth by the Robsons in support of their claim regarding punitive damages, *See* 75 Pa.C.S.A. § 1773, does not compel a different interpretation of the underinsured motorist coverage statute in question, 75 Pa.C.S.A. § 1731(c), than that discussed above.