**Paul KAO and Nina Kao, Plaintiffs**

v.

**MARKEL INSURANCE COMPANY, et. al., Defendants.**

**Civil Action No. 09–CV–3249.**

United States District Court, E.D. Pennsylvania.

April 12, 2010.

Bruce L. Neff, Martin J. Beck, Neff and Associates, Philadelphia, PA, for Plaintiffs.

Claudia D. McCarron, Michael Robert Fox, Nelson Levine DeLuca & Horst LLC, Blue Bell, PA, for Defendants.

## *MEMORANDUM*

ANITA B. BRODY, District Judge.

### I. BACKGROUND[1]

Plaintiffs Paul and Nina Kao ("Plaintiffs" or "Kaos") bring this action against Defendants Markel Insurance Company, Markel American Insurance Company, Essex Insurance Company, and Markel Corporation (collectively "Defendants" or "Markel") to recover for alleged property damage to two buildings owned by Plaintiffs, located at 2327 and 2329 South 7th Street, Philadelphia, Pennsylvania (respectively "2327" and "2329"). Both 2327 and 2329 are multi-unit dwellings, with commercial properties on the first floor, and separate apartments on the second and third floors. The buildings lack common areas other than hallways and staircases. Each address has its own exterior entrance; there is also an interior door that separates 2327 and 2329.

The Kaos purchased an insurance policy covering 2327 and 2329 from Markel. The Markel insurance policy contains a "Government Acts Exclusion" which states: "We will not pay for loss or damage caused directly or indirectly by . . . seizure or destruction of property by Order of Governmental Authority." On or about June 26, 2008, police forcibly entered 2327 and 2329. The police held a search warrant for address 2329. The Affidavit of Probable Cause attached to the warrant indicates that on June 24, 2008, Philadelphia police observed a confidential informant approach a group of males on the block of the insured premises. One of the males accepted money from the informant and walked into 2329 for approximately one minute, exiting with two bags containing crack cocaine. A similar buy was observed the following day. The Affidavit concludes that a "Real Estate check reveals Paul Kao and Nino Kao." Based on this information, a warrant was issued to

---

1. For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (internal quotation marks omitted). Here, the facts are stated in the light most favorable to the Kaos, with all justifiable inferences drawn in their favor.

search "2329 S. 7th St., 3 story masonry." The owner identified on the search warrant is an Asian male. Plaintiffs Paul and Nina Kao own and rent out the different units at 2327 and 2329.

The search conducted on June 26, 2008 caused damage to the doors of all of the residential units in both 2327 and 2329—a total of six units—and to a door to an office on the first floor. Thereafter, Plaintiffs notified Markel of the property damage. Plaintiffs' claim was assigned to an outside adjuster, John F. McHenry ("McHenry") of McHenry Adjustment Company, who inspected the property on or about July 16, 2008. At the inspection, Plaintiffs informed McHenry that the damage was caused by police executing a search warrant. In his preliminary report, McHenry informed Markel that the damage to the property was caused by the execution of a search warrant. McHenry further informed Markel that the property had two separate addresses and contained a total of six apartment units. McHenry also informed Defendants that he was "attempting to obtain a copy of the Philadelphia Police Department's Incident Report to confirm the circumstances surrounding the matter."

In a later report by McHenry to Markel dated September 24, 2008, McHenry noted that he was still waiting for the police report and requested that Defendants review the Government Acts Exclusion and advise how they would like to proceed. In an October 8, 2008, e-mail, Markel's claim adjuster informed McHenry, "I know we do not have the police report yet, but the report will only confirm what you have found as the cause of loss." The adjuster directed McHenry to write a denial letter to the Kaos. McHenry wrote to the Kaos informing them that the damage to their properties was caused by an Order of Governmental Authority, and thus the policy would not provide coverage. At the time McHenry sent the denial letter to the Kaos, he had obtained a copy of the incident report, which refers to only one of the addresses. Neither McHenry nor Markel ever obtained a copy of the warrant before issuing the denial.

## II. JURISDICTION

This is a removal action based on diversity jurisdiction. This court has jurisdiction pursuant to 28 U.S.C. § 1332, § 1441, and § 1446.

## III. LEGAL STANDARD

Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a "genuine" issue of material fact if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether the non-moving party has estab-

lished each element of its case, the court must draw all reasonable inferences in the non-moving party's favor. *Id.* at 587, 106 S.Ct. 1348.

Because this is a diversity action, Pennsylvania state law applies. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

## IV. DISCUSSION

Plaintiffs allege two counts: breach of contract under the insurance policy, and bad faith. I conclude that Plaintiffs have made a sufficient showing on their breach of contract claim to survive summary judgment. Plaintiffs have not proffered sufficient evidence to demonstrate bad faith on the part of Defendants; thus summary judgment with respect to the bad faith claim is granted.

### A. Breach of Contract

■ To establish breach of contract, a plaintiff must demonstrate three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 884 (Pa.Super.Ct.2000). An insurance policy constitutes a contract. *See Smith v. CNA Ins.,* 319 Pa.Super. 449, 466 A.2d 629, 632 (1983).

It is undisputed that an insurance contract existed between Plaintiffs and Defendants. It is also undisputed that 2327 and 2329 were damaged. Thus, the question is whether Markel refused to remunerate the Kaos for their losses in breach of a duty imposed by the contract. Markel argues that a clause within the insurance policy, known as the "Government Acts Exclusion" ("Exclusion"), excludes coverage in this case and absolves Defendants of any obligation to pay the Kaos for the damage at issue. Specifically, the Government Acts Exclusion states: "We will not pay for loss or damage caused directly or indirectly by ... seizure or destruction of property by order of Governmental Authority." Markel argues that the executed search was "by Order of Governmental Authority." [2]

■ Plaintiffs argue, however, that the Government Acts Exclusion is inapplicable because the warrant at issue was both invalid and illegally executed, and therefore any damage done to Plaintiffs' property was not "by Order of Governmental Authority." Therefore, the first question is if, for the Government Acts Exclusion to apply, an order of government authority must be valid and lawfully executed. Concluding that an order must be both valid and lawfully executed in order for the Exclusion to apply, the next issue to examine is whether the warrant in this case was valid and lawfully executed. In order for a warrant to be valid under both federal and Pennsylvania law, it must meet the requirements of probable cause and particularity. *See* Pa. R.Crim. P. 205; U.S. Const. amend. IV. I conclude that the warrant in this case was not properly executed; because the police officers exceeded the scope of their authority, the damage done was not "by Order of Governmental Authority."

■ Plaintiffs first argue that because the warrant identified only 2329, the officers impermissibly entered 2327 S. 7th St.,

---

**2.** As an initial matter, both parties agree that a warrant is generally an order of governmental authority.

an entirely different address, an act done without any order of government authority. As a preliminary matter, Plaintiffs are correct that the damage done to 2327 was not by order of governmental authority. There simply was no order to search 2327. Any damage done to that address is not covered by the Exclusion.

Next, Plaintiffs argue that the warrant for 2329 was invalid due to lack of particularity because it failed to describe a particular unit or apartment within the building to be searched, and because there was no probable cause to search the entire building. Plaintiffs further argue that the warrant was illegally executed; that is, even if valid or apparently valid when issued, once the police entered 2329 and saw that the building was a multi-unit dwelling, they should have realized that the warrant was overbroad and ceased the search before entering the individual apartments. I conclude that the warrant was unlawfully executed, and therefore, the Government Acts Exclusion is inapplicable.

*1. The Exclusion is inapplicable where the "order" is an invalid or illegally executed warrant*

■ The validity of Plaintiffs' arguments regarding the search of 2329 hinges on whether the Government Acts Exclusion includes a lawfulness requirement. The "interpretation of an insurance contract regarding the existence or nonexistence of coverage is generally performed by the court." *Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290 (2007) (internal quotation marks omitted); *Nationwide Mut. Ins. Co. v. CPB Int'l Inc.,* 562 F.3d 591, 595 (3d Cir.2009). The court's "purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear

and unambiguous, we must give effect to that language." *Donegal,* 938 A.2d at 290. "However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the [contract's] prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Donegal,* 938 A.2d at 290. *See Nationwide Mut. Ins. Co.,* 562 F.3d at 595. *See also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins.,* 589 Pa. 317, 908 A.2d 888, 897 (2006). I thus construe any ambiguity in favor of the Plaintiffs.

■ The language "by Order of Governmental Authority" reasonably means by lawful order of government authority that is lawfully executed. While no Pennsylvania courts have examined the applicability of Government Acts Exclusions in insurance policy contracts, other courts have held, *inter alia,* that in order for such a Government Acts Exclusion to apply, the government order must have been lawful, and authorities must have acted within the bounds of the governmental order. *See West Elecs., Inc. v. Nat. Union Fire Ins. Co.,* 128 B.R. 905, 911 (Bankr.D.N.J.1991) ("only acts which arise out of lawful orders will prevent liability" under the insurance policy's government acts exclusions); *Bankers Fire & Marine Ins. v. Bukacek,* 271 Ala. 182, 123 So.2d 157, 161–63 (1960) (determining that a government "order is the cause of the loss and [the] insurer is not liable when the loss is the unintended result of an act, done as directed, in execution of a lawful order made in good faith and within the apparent scope of the powers of the civil authority issuing the order," and stating that an order cannot be the cause of the loss when the act done is "not one the civil authority is authorized by law to do or order to be done"); *Alton v. Mfrs. & Merchants Mut. Ins. Co.,* 416

Mass. 611, 624 N.E.2d 545, 546–47 (1993) (concluding that an insurance policy's government acts exclusion applied where the police were executing a "legal order of governmental authority" and where plaintiff made no contention that damage was done pursuant to an invalid search or that police officers had exceeded the scope of their authority); *American Central Ins. Co. v. Stearns Lumber Co.*, 145 Ky. 255, 140 S.W. 148, 149–150 (Ky.Ct.App.1911) (where a hotel was burned down by order of a marshal because criminals resisting arrest were hiding in the hotel, the court looked behind the order of a marshal to determine whether the marshal had the authority to make and carry out that order; because the marshal was not authorized by law to do what he did, the loss was "not due, directly or indirectly, to the order of any civil authority").

Reading the language of the Exclusion favorably to the Plaintiff insureds, the Government Acts Exclusion encompasses only government orders that are lawful and lawfully executed. To the extent the language is ambiguous, the onus is on the insurer to make the contract provision unequivocal. It would be absurd to apply the Exclusion in a situation where police officers hold a warrant that appears facially valid, but use this warrant in a way that clearly exceeds the scope of any authority granted to them. Imagine a situation where police obtained a warrant that listed the general address of a large apartment complex in Rittenhouse Square—for example a warrant for "2031 Locust Street"—without specifying any particular apartment or subunit. The police would not have the authority to break down the doors to all of the apartments in a 20–story or even a 5–story building, and would be well aware of this as soon as they walked into the building and saw the different apartment units (if not before). If the police proceeded to break down the door of 15 (or 50) different apartments, they would not be lawfully executing the warrant they held, and thus not acting by order of governmental authority. That principle applies in this case—it would be absurd to conclude that the general warrant in this case allowed the police to break down the doors to several different apartments.

Thus where damage results from an act done within the scope of and in execution of a lawful order, the Exclusion applies. Where government agents act pursuant to an unlawful order or act beyond their authority, however, the Exclusion does not apply.

## 2. The warrant was overbroad and illegally executed

■ In this case, the warrant was invalid under Pennsylvania law, and illegally executed under federal constitutional law. Because the relevant order is a search warrant, the rules governing the lawful applicability of search warrants and lawful execution of search warrants are relevant in determining whether the police officers acted within the scope of their authority. Both federal Constitutional law under the Fourth Amendment and Pennsylvania law regarding search warrants are applicable.

■ In order for a warrant to be valid under both federal and Pennsylvania law, it must meet the requirements of probable cause and particularity. *See* Pa. R.Crim. P. 205; U.S. Const. amend. IV. A warrant must describe with particularity the person or place to be searched. In Pennsylvania, "a search warrant directed against a[n] . . . apartment house, or other multiple-occupancy structure[,] will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units." *Commonwealth v. Carlisle*, 517 Pa. 36, 534 A.2d

469, 471 (1987). 2329 is a multi-occupancy building. The first floor consists of commercial property, and the second and third floors have separate apartments, each with their own doors. The only common areas in the building are hallways and staircases. Because the warrant issued was to search 2329 generally, without listing a particular apartment or subunit, the warrant was invalid under Pennsylvania law. *Id.*

Under federal law, a warrant issued for a multi-unit structure that does not specify a particular apartment may still be valid when issued, if the police officers who applied for the warrant reasonably believed, after a reasonable investigation, that the premise was in fact a single-unit dwelling. *See Maryland v. Garrison,* 480 U.S. 79, 81, 85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In *Maryland,* the officers obtained a warrant to search "the premises known as 2036 Park Avenue third floor apartment." *Id.* at 80, 107 S.Ct. 1013. When the police applied for the warrant, they reasonably believed that there was only one apartment which could fit this description. *Id.* In fact, the third floor of the premises had two apartments, not one. The U.S. Supreme Court held that the officer who obtained the warrant "reasonably concluded that there was only one apartment on the third floor" and therefore the warrant was valid as issued. *Id.* at 81, 107 S.Ct. 1013.[3]

However, even where a warrant is valid as issued, there remains the separate question of whether the warrant was then reasonably executed. *See Mary-*

*land,* 480 U.S. at 84, 107 S.Ct. 1013. In this case, it was not. The warrant in this case was in fact overbroad. It was issued with respect to a multi-unit building without specifying any particular sub-unit. When a warrant is overbroad, but valid as issued, the standard for whether the warrant was validly executed is "whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88, 107 S.Ct. 1013.

In *Maryland,* the police walked up to the third floor of the building, and noticed a single locked door at the top of the third floor. *Id.* at 81, 107 S.Ct. 1013. Upon opening that door, there was a hallway foyer with a resident standing in the area. *Id.* Doors on the left and right side were both open, and police could see into the interior of apartments on both the left and right. *Id.* In *Maryland,* the police could have initially reasonably thought that the entire floor was one apartment. Additionally, once the police realized that there were two separate apartments, the police discontinued the search. *Id.* The Court thus concluded that the search was validly executed. *Id.* at 88, 107 S.Ct. 1013. The Court explicitly distinguished the facts in *Maryland* from a situation "in which the police know there are two apartments on a certain floor of a building" and only have probable cause to believe that one apartment has contraband, but do not know which apartment has it. *Id.* at 88 n. 13, 107 S.Ct. 1013. In such a case, the police would not be justified in searching both

---

**3.** There is an argument that even under federal law, the warrant in this case was invalid when issued, because this case is factually distinguishable from *Maryland.* It is significantly less likely under the facts of this case that the officers could have reasonably believed that the building was a single unit residence. In *Maryland,* the warrant did not list an entire building-it specified the third

floor. In this case, no such distinction was made; the warrant was issued for the entire building, even though there were three floors, and the unit had commercial property on the first floor. However, whether the warrant was validly issued under federal law is not dispositive in this case, because even if it was valid when issued, it was illegally executed.

apartments. The case at bar is precisely analogous to this latter factual scenario. It is inconceivable that the police here did not realize upon entering building 2329 that it contained separate apartments. When the police entered, there was commercial property on the first floor, a staircase, a hallway, and separate closed doors to each apartment. The officers' failure to realize the overbreadth of the warrant and cease the search was not objectively reasonable, and the search of each apartment was invalid. Because the search and the resultant damage done exceeded the scope of any authority permitted by the warrant, the damage done was not by order of government authority, and is not encompassed within the Exclusion.

## B. Bad Faith

■ To prove bad faith, an insured must show by clear and convincing evidence that the insurer "[1] did not have a reasonable basis for denying benefits under the policy and . . . [2] knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994).[4] The court in *Terletsky* elaborated:

> In the insurance context, the term bad faith has acquired a particular meaning . . . "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty . . . through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

■ *Id.* Thus the standard for showing bad faith is a high one. Though Markel was ultimately incorrect in its determination of policy coverage in this case, because the applicability of the Exclusion was ambiguous, Markel's interpretation that any facially valid government order sufficed to preclude coverage was not devoid of a reasonable basis. Defendants reasonably believed, based on what Plaintiffs told them, that the damage caused was done pursuant to a facially valid warrant. At worst, Defendants were negligent in assuming that the warrant was facially valid, and in denying coverage before obtaining a copy of the warrant. Defendants' reliance on Plaintiffs' explanation of the cause of damage and on an assumption that the warrant was likely to be valid does not rise to the level of reckless disregard necessary to show bad faith.

## V. CONCLUSION

Summary Judgment is DENIED with respect to Plaintiffs' breach of contract claim, but GRANTED with respect to Plaintiffs' bad faith claim.

### *ORDER*

AND NOW, this 12 day of April 2010, it is ORDERED that Defendants' Motion for Summary Judgment (Doc #11) is GRANTED in part and DENIED in part, as follows:

● Defendants' Motion on Plaintiffs' Breach of Contract Claim is DENIED.

● Defendants' Motion on Plaintiffs' Bad Faith claim is GRANTED.

---

4. While the Pennsylvania Supreme Court has yet to address the issue, the Third Circuit has predicted that the Pennsylvania Supreme Court would follow the two-prong test in *Terletsky. See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005).